# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6972 | **DATE** | 8/7/2002 |
| **CASE TITLE** | ROBERT HIGDON vs. ENTENMANN'S SALES CO., INC., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' renewed motion for judgment as a matter of law [70-1], or alternatively, motion for a new trial [70-2] is denied. Plaintiff's Rule 59(e) motion to alter and amend [68-1] judgment is granted in part and denied in part. Judgment entered June 20, 2002 [65-1] is vacated. The parties shall submit a proposed final judgment order consistent with this opinion by August 30, 2002, calculating amounts to be paid by each defendant through satisfaction of judgment, including reinstatement. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 08 2002 | |
| | Notified counsel by telephone. | | date docketed | 90 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/7/2002 | |
| CB | courtroom deputy's initials | 02 AUG -7 PM 3:03 Date/time received in central Clerk's Office | date mailed notice PW mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT HIGDON, )
)
Plaintiff, ) No. 01 C 6972
)
v. ) Suzanne B. Conlon, Judge
)
ENTENMANN'S SALES COMPANY, INC. )
and INTERNATIONAL BROTHERHOOD OF )
TEAMSTERS LOCAL 734, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Robert Higdon ("Higdon") sued Entenmann's Sales Company, Inc. ("Entenmann's") and International Brotherhood of Teamsters Local 734 ("Local 734")(collectively, "defendants") for violations of § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. 141 *et seq.* Specifically, Higdon claimed Entenmann's breached the collective bargaining agreement ("CBA") with Local 734 by terminating him without just cause and for his union activity. Higdon also claimed Local 734 breached its duty of fair representation by failing to adequately contest his suspension and termination. The court denied defendants' motions for summary judgment and set the case for trial. *See Higdon v. Entenmann's Sales Co., Inc.*, 2002 WL 653896 (N.D. Ill. Apr. 19, 2002). The court denied defendants' motions for judgment as a matter of law at the close of Higdon's case and at the close of all the evidence. On June 19, 2002, the jury returned a verdict in Higdon's favor in the amount of $37,300.00.



1

The parties filed timely post-trial motions. Defendants move for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or alternatively, for a new trial pursuant to Federal Rule of Civil Procedure 59. Higdon moves to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) to include reinstatement or front pay, additional back pay, injunctive relief, prejudgment and postjudgment interest, attorneys' fees and costs and a finding of joint and several liability.

## DISCUSSION

### I. Defendants' Motion for Judgment as a Matter of Law or Alternatively, A New Trial

Judgment as a matter of law under Rule 50 is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 422 (7th Cir. 2000), *quoting* Fed. R. Civ. P. 50(a)(1). In deciding a motion for judgment as a mater of law, the court must consider "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Mathur v. Board of Trustees of Southern Illinois University*, 207 F.3d 938, 941 (7th Cir. 2000), *quoting Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 629 (7th Cir. 1996). The court may not substitute its view of the contested evidence for that of the jury. *Mathur*, 207 F.3d at 941.

Similarly, a Rule 59 motion for a new trial should be granted if the jury's verdict was against the weight of the evidence, the damages were excessive, or the trial was unfair. *Westchester Fire Ins. Co. v. General Star Indemnity Co.*, 183 F.3d 578, 582 (7th Cir. 1999). A jury verdict will not be set aside if there exists a reasonable basis in the record to support the verdict. *Id.*

2

### A. Breach of the CBA

Defendants first claim Higdon failed to present a legally sufficient basis for the jury to find he was terminated without just cause or for his union activities. In doing so, defendants rehash the arguments made in their motion for summary judgment as well as their two previous motions for judgment as a matter of law.

### 1. Termination for Just Cause

Under the CBA, Entenmann's may terminate an employee only for just cause. "Just cause is a flexible concept, embodying notions of equity and fairness. *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997), *quoting Arch of Illinois, Div. of Apogee Coal Corp. v. District 12, United Mine Workers of America*, 85 F.3d 1289, 1294 (7th Cir. 1996). In order to be just, the penalty must be consistent with the seriousness of the offense. *Id.* at 1242.

Defendants claim Higdon failed to present evidence that other route sales representatives carried an outstanding case balance for a similar duration, but were not disciplined. Specifically, defendants argue Higdon should be compared to George Montgomery, who "involuntarily resigned," rather than other route sales representatives who had outstanding balances in November 2000. Contrary to defendants' position, Higdon presented evidence that other route sales representatives were not disciplined for having outstanding balances at the time Higdon received the written warning that ultimately led to his discharge. At that time, one route sales representative, George Garcia, owed almost as much as Higdon for at least a ten month period. Higdon also presented evidence that Montgomery: (1) failed to turn in his cash stop money daily after the November 13, 2000 reminder was posted; (2) Montgomery issued a check drawn on insufficient funds to pay the outstanding balance; and (3) Entenmann's gave Montgomery the option of resigning. Based on the evidence

3

presented at trial, a reasonable jury could conclude Garcia was comparable to Higdon, while Montgomery was not.

In any event, the jury could reasonably conclude Higdon was not terminated for just cause based on Entenmann's initial reaction to Higdon's outstanding balance. Upon learning of Higdon's outstanding balance, division sales manager Joe Schuch issued a documented verbal warning in accordance with Entenmann's practice of progressive discipline. Human resources director John Engler then waited four months after learning of Higdon's original outstanding balance and two months after learning of his revised outstanding balance to terminate his employment. Although Engler thereafter received notice that other route sales representatives had outstanding balances, Engler did not pursue the issue. The evidence presented at trial adequately supports the jury's verdict that Higdon was terminated without just cause in violation of the CBA.

2. **Termination for Union Activity**

Under the CBA, Entenmann's may not terminate an employee for engaging in union activity on their own time. Defendants claim Higdon failed to present evidence linking his termination to his union activities. Specifically, defendants argue Engler's statements that he "regretted suspending [Sladek] and Hull, but not Higdon" after engaging in union activity on company time and that Higdon "always files protests" does not demonstrate union animus. To the contrary, the jury was entitled to infer Engler regretted suspending Sladek and Hull, rather than Higdon, because Higdon was the one "always fil[ing] protests."

Moreover, the jury was entitled to conclude Engler terminated Higdon because of his numerous grievances and protests. Engler, knowing that other route sales representatives may be carrying outstanding balances, only asked for an audit of Higdon's account. At that time, Engler

4

knew Higdon had filed a protest three weeks earlier. According to Entenmann's, Engler made the request when he learned of Higdon's balance upon returning from a business trip. Nevertheless, the jury was entitled to infer Engler's true motivation was Higdon's union activity, especially when Engler terminated Higdon's employment approximately two weeks after Higdon lodged a second protest against several Entenmann's employees, including Engler. *See Fyfe v. City of Fort Wayne*, 241 F.3d 597, 601-02 (7th Cir. 2001)(timing may provide the necessary causal nexus where the adverse action follows fairly soon after the protected activity). The evidence presented at trial, including evidence of Entenmann's cordial business relationship with Local 734's current leadership, adequately supports the jury's verdict.

**B.    Breach of Duty of Fair Representation**

Defendants next claim Higdon failed to present a legally sufficient basis for the jury to find Local 734 breached its duty of fair representation. A union breaches its duty of fair representation in handling a grievance when its conduct is arbitrary, discriminatory or in bad faith. *Crider*, 130 F.3d at 1243. For example, a union may breach its duty of fair representation by intentionally undermining an employee's grievance based on his political allegiances within the union. *Thomas v. United Parcel Service, Inc.*, 890 F.2d 909, 923 (7th Cir. 1989). A union member may have a valid claim if his representative tainted the grievance process with personal hostility. *Conn v. GATX Terminals Corp.*, 18 F.3d 417, 421 (7th Cir. 1994).

Defendants argue Local 734's willingness to pursue Higdon's grievances in 1997 and 1999 establishes its good faith in processing his grievances in 2001. Defendants' argument fails to account for the parties' subsequent strained relations. In 2001, Local 734's executive board, which barely won the hotly contested 1999 election, was once again faced with Higdon running for office

5

against one of its own, Robert Brooks. At the time of his suspension, Higdon had already filed a pre-election protest against Brooks individually. Nevertheless, Brooks represented Higdon at the grievance meeting held in connection with his suspension. At the grievance meeting, Higdon informed the attendees, including Brooks, that other route sales representatives, including Garcia, carried outstanding balances. After the grievance meeting, Higdon filed a second protest against Brooks, claiming a conflict of interest prevented Brooks from adequately representing him. Engler fired Higdon approximately two weeks later.

After his termination, Higdon filed a second grievance. Despite Higdon's complaint, Local 734's executive board allowed Brooks to continue to represent Higdon in connection with his termination. Rather than requesting a grievance meeting, Brooks spoke to Engler privately without Higdon present. When Engler denied Higdon's grievance, Brooks presented Higdon's case to the executive board for a decision on arbitration. The executive board was comprised of the same individuals who criticized Higdon and requested his expulsion from Local 734 during the very close 1999 election. At trial, Brooks admitted that he did not seek documentation relating to the route sales representatives identified by Higdon nor did he tell the executive board that other route sales representatives may have similar outstanding balances. As a result, Local 734's outside counsel did not have this information in recommending that Local 734 not arbitrate Higdon's grievance. Based on the evidence presented at trial, a jury could reasonably find Local 734, through Brooks and/or the executive board, intentionally undermined Higdon's grievance based on his union activities.

In sum, the jury was entitled to weigh the conflicting evidence, evaluate the credibility of the witnesses, and determine whether the evidence supported Higdon's claims. Based on the record, the

6

court cannot conclude the verdict lacks evidentiary support. Accordingly, defendants' motion for judgment as a matter of law, or alternatively, a new trial must be denied.

## II. Higdon's Motion to Alter or Amend Judgment

Higdon moves to alter or amend the judgment to include reinstatement or front pay, additional back pay, injunctive relief, prejudgment and postjudgment interest, attorneys' fees and costs and a finding of joint and several liability. Entenmann's objects to Higdon's requests with the exception of his request for postjudgment interest. Local 734 addresses only Higdon's request for injunctive relief and attorneys' fees.

Congress has not specified the remedies available in a § 301 hybrid action. *See IBEW v. Foust*, 99 S.Ct. 2121, 2125 (1979). However, the Supreme Court has recognized "the fundamental purpose of unfair representation suits is to compensate for injuries caused by violations of employee rights." *Id.* at 2125-26. "[R]elief in each case should be fashioned to make the injured employee whole." *Id.* at 2126.

### A. Reinstatement or, Alternatively, Front Pay

Higdon requests reinstatement with full seniority and benefits. Reinstatement, rather than front pay, should be awarded when feasible. *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 861-62 (7th Cir. 2001). In determining whether reinstatement is feasible, the court may consider a number of factors, including the parties' working relationship and the availability of a position. *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1141 (7th Cir. 1993).

Entenmann's claims the history of animosity between the parties precludes an award of reinstatement. "A court must be careful . . . not to allow an employer to use its anger or hostility toward the plaintiff for having filed a lawsuit as an excuse to avoid the plaintiff's reinstatement."

7

*Bruso*, 239 F.3d at 862. "If 'hostility common to litigation' would justify a denial of reinstatement, reinstatement would cease to be a remedy except in cases where the defendant felt like reinstating the plaintiff." *EEOC v. Century Broadcasting Corp.*, 957 F.2d 1446, 1462 (7th Cir. 1992). According to Entenmann's, the parties' hostility derives from Higdon's "multiple charges and/or claims against Entenmann's, Mr. Engler and members of Local 734's Executive Board with various governmental and union organizations." Response at 3. Any animosity arising from the protected union activity underlying Higdon's lawsuit cannot be a basis for denying reinstatement.

Entenmann's next claims the nature of the route sales representative position supports a denial of reinstatement. Specifically, Entenmann's claims Higdon's "expressed perception that his employer and his union are 'out to get him' will inevitably permeate and sour his relationships with Entenmann's customers and the public Entenmann's serves." Response at 3. Entenmann's argument ignores the parties' history. Higdon filed charges and/or claims against Entenmann's, Engler and members of Local 734's executive board in 1996, 1999, 2000 and 2001. Entenmann's never claimed that Higdon's animosity toward the company spilled over into his relationships with Entenmann's customers during this five year period. Nor has Entenmann's demonstrated that Higdon's alleged animosity has worsened subsequent to his termination. On this record, the court cannot conclude Higdon's reinstatement will adversely affect Entenmann's relationship with its customers.

Finally, Entenmann's claims Higdon cannot be trusted to competently and completely perform the responsibilities of a route sales representative given the amount and duration of the outstanding balance leading to his termination. As Entenmann's points out, reinstatement is unavailable where the plaintiff would no longer enjoy the confidence and respect of his superiors. *Tennes v. Commonwealth of Massachusetts, Dep't of Revenue*, 944 F.2d 372, 381 (7th Cir. 1991).

However, Entenmann's has not demonstrated that Higdon's direct supervisors question his ability to perform the responsibilities of a route sales representative. To the contrary, Schuch only gave Higdon a documented verbal warning upon learning of his outstanding balance. In any event, the court must respect the findings implied by the jury's verdict in fashioning equitable remedies. *Dranchak v. Akzo Nobel Inc.*, 88 F.3d 457, 458-59 (7th Cir. 1996). Implicit in the jury's verdict is the finding that Higdon's outstanding balance did not warrant termination. Therefore, Entenmann's concerns about Higdon's performance does not preclude reinstatement.

Nevertheless, Entenmann's argues "there are currently no other openings for [route sales representatives] in the Chicago area, which includes the Northlake, Addison and Crestwood depots." Response at 2. In response, Higdon offers the declaration of Don Hull, a route sales representative at Entenmann's Addison location, who avers he informed Entenmann's and Local 734 in June 2002 that he would be retiring effective August 3, 2002. According to Hull, his position will be placed for bid in September 2002 when he exhausts his accrued vacation time. Hull's retirement allows Higdon's reinstatement without displacing another employee. Under these circumstances, the preferred remedy of reinstatement is appropriate.

**B.     Back Pay**

Higdon next advances two grounds for an increase in his back pay award. First, Higdon claims back pay in the amount of $448.00 from the date of the jury's verdict through the date of his reinstatement is necessary to make him whole. Entenmann's does not dispute this amount. Therefore, Higdon is granted $448.00 per week in additional back pay until he is reinstated.

Second, Higdon requests an additional $10,000 in back pay, claiming the jury improperly deducted the amount of his unemployment compensation from its award. The record is devoid of

9

any basis for Higdon's claim. Indeed, Higdon's unemployment compensation amounted to $10,842.00, $842.00 more than the $10,000 deduction purportedly taken by the jury. Nevertheless, Higdon fails to offer evidence he was not made whole through the jury's verdict. *See United States Can Co. v. NLRB*, 254 F.3d 626, 634 (7th Cir. 2001)("What is important for compensation is not whether benefits pass through financial intermediary, but whether the victim is put in the same position he would have occupied had his rights been respected"). Under these circumstances, the court will not disturb the jury's verdict. *See EEOC v. O'Grady*, 857 F.2d 383, 390 (7th Cir. 1988)(decision to deduct collateral benefits such as unemployment benefits is within the district court's sound discretion).

C.   **Injunctive Relief**

Higdon requests an order enjoining Entenmann's from future violations of the CBA and Local 734 from future violations of its duty of fair representation. In determining whether injunctive relief is appropriate, the court must determine whether the conduct could persist in the future. *Bruso*, 239 F.3d at 864. Higdon succeeded in persuading the jury that Entenmann's violated the CBA and Local 734 breached its duty of fair representation in connection with his termination. Defendants have not offered evidence supporting their claim that their conduct will not occur again. To the contrary, the same individuals responsible for Higdon's termination remain in positions of power at Entenmann's and Local 734. Under similar circumstances, the Seventh Circuit concluded the district court abused its discretion in refusing to award any injunctive relief in light of the jury's verdict in favor of the plaintiff. *Id.* Therefore, an injunction prohibiting future violations is required to provide Higdon with the legal protection he won at trial.

### D. Interest

Higdon requests prejudgment and postjudgment interest on the jury award. Entenmann's does not object to the award of postjudgment interest at the statutory rate from the date of judgment to the date of satisfaction. 28 U.S.C. § 1961(a). Rather, Entenmann's claims the court should exercise its discretion to deny Higdon's claim for prejudgment interest as inappropriate.

A district court's discretion to deny prejudgment interest is limited. *Hutchison v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1046 (7th Cir. 1994). Indeed, prejudgment interest is presumptively available to victims of federal law violations. *Id., quoting Gorenstein Enterprises v. Quality Care-USA*, 874 F.2d 432, 1436 (7th Cir. 1989). Entenmann's has not offered any basis for the denial of prejudgment interest. Therefore, Higdon is entitled to prejudgment interest in the amount of $1,555.

### E. Attorneys' Fees and Costs

Higdon seeks attorneys' fees and costs. A plaintiff in a successful hybrid 301 suit may recover attorneys' fees as compensatory damages. *See Bennett v. Local Union No. 66*, 958 F.2d 1429, 1439 (7th Cir. 1992)("When there is a legal duty to provide [union] representation, whether that duty arises out of contractual undertaking, or, as here, by operation of law, if the representation is wrongfully withheld the cost of substitute representation should be recoverable damages"). Higdon seeks attorneys' fees in the amount of $62,287.50, representing 249.15 hours of work at an hourly rate of $250.00. Defendants do not contest the reasonableness of the hours spent or rate charged by Higdon's attorneys. Rather, Entenmann's argues Higdon's attorneys' fees should be reduced to $34,160.50, the amount of Higdon's liability under the fee agreement with his attorneys.

Unlike fee-shifting statutes, Higdon's recovery for attorneys' fees as part of his compensatory damages is limited to the amount he actually expended in prosecuting his case. *See Endicott v. Huddleston*, 644 F.2d 1208, 1217 (7th Cir. 1980)(plaintiff entitled to recover compensatory damages in the amount of attorneys' fees expended). Pursuant to the fee agreement entered into with his attorneys, Higdon is not obligated to pay his attorneys for all hours worked on his behalf. Instead, Higdon is required to pay his attorneys $5,500 plus one-third of his recovery, including one-third of his first year salary if he is reinstated. To date, Higdon is liable for $35,482.33 ($5,500 + 1/3($37,300 + $1,115) + 1/3($991/week x 52 weeks) in attorneys' fees. Higdon's attorneys' fees continue to accrue in the amount of $149.33 per week (1/3 x $448.00) until his reinstatement plus one-third of the amount of postjudgment interest until judgment is satisfied.

Higdon's request for costs duplicates his bill of costs. The court will consider Higdon's bill of costs after receiving defendants' response.

## F.   Joint and Several Liability

Finally, Higdon asks the court to apportion damages between Entenmann's and Local 734. During the pretrial conference, the parties agreed to seek court intervention only if Entenmann's and Local 734 could not apportion damages between themselves. According to Entenmann's, "[i]t is not necessary . . . for the Court to apportion the damages between Entenmann's and Local 734 at this time" because "[b]oth [d]efendants are committed to determine the apportionment of damages between themselves." Response at 14. Therefore, the parties shall submit a proposed final judgment order consistent with this opinion by August 30, 2002, calculating amounts to be paid by each defendant through satisfaction of judgment, including reinstatement.

## CONCLUSION

Defendants' renewed motion for judgment as a matter of law or alternatively, a new trial is denied. Higdon's motion to alter or amend the judgment is granted in part and denied in part. Higdon is awarded prejudgment interest in the amount of $1,555.00 and postjudgment interest at the statutory rate until judgment is satisfied. Entenmann's is ordered to reinstate Higdon to his former position of route sales representative with seniority and benefits that would have accrued had Higdon not been discharged. Higdon is entitled to $448.00 per week in back pay from the date of the jury's verdict until he is reinstated. Higdon is awarded attorneys' fees in the amount of $35,482.33, which will continue to accrue at a rate of $149.33 per week until his reinstatement plus one-third the amount of postjudgment interest until judgment is satisfied. Entenmann's is enjoined from future violations of the CBA in relation to Higdon. Local 734 is enjoined from breaching its duty of fair representation in relation to Higdon.

August 7, 2002

ENTER:

Suzanne B. Conlon
United States District Judge